# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| LARRY WATKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-00092 |
| | ) CHIEF JUDGE CRENSHAW |
| WARDEN CHERYL LINDAMOOD, et al., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Larry Watkins alleges in this pro se prisoner civil rights action brought under 42 U.S.C. § 1983 that he suffered discrimination on the basis of his race in violation of the Equal Protection Clause and a violation of his due process rights in the prison disciplinary process. (Doc. No. 1.) Watkins's claims arise out of an incident that took place on September 22, 2016, in which a guard discovered a contraband cell phone in a cell shared by Watkins and his cellmate, inmate Lyles. (Id.) Watkins, who is African-American, received a disciplinary charge and loss of privileges as a result; Lyles, who is white and who was present during the incident, was not charged. Watkins claims this discrepancy is due to his race and is a violation of his equal protection rights. Watkins' due process claim arises out of the denial of his request for video footage taken on the date of the incident for his use in the resulting disciplinary hearing. (Id.)

Now pending is a motion for summary judgment filed by Defendants Jimmy Letney, William Mark Hacker, Danny Casteel, and Brenda Pevahouse. (Doc. No. 49.) The motion is supported by the declarations of each defendant (Doc. Nos. 49-1, 49-2, 49-3, 49-4), a memorandum of law (Doc. No. 50), and a statement of undisputed material facts (Doc. No. 51).

Watkins did not file a response to the summary judgment motion, nor did he respond to the statement of undisputed material facts. However, he filed a "motion to present facts of civil rights violation" after being served with the summary judgment motion. (Doc. No. 52.) The Court previously construed this filing as a response to the summary judgment motion (Doc. No. 60, PageID# 432), and it is considered as such for purposes of this order. The motion was previously referred to the Magistrate Judge (Doc. No. 8), and that order of referral is hereby revoked. For the reasons that follow, and in consideration of the record as a whole, Defendants' motion for summary judgment is granted.

I.  Background

Larry Watkins was an inmate at the South Central Correctional Facility (SCCF) in Clifton, Tennessee, from the time that he filed this action until October 2017, when he was transferred to the Riverbend Maximum Security Institution in Nashville. (Doc. No. 58.) At all relevant times, Defendants Letney, Hacker, Casteel, and Pevahouse were employees of Corrections Corporation of America (CCA) and worked at SCCF. (Doc. No. 49-1, PageID# 337, ¶ 2; Doc. No. 49-2, PageID# 341, ¶ 2; Doc. No. 49-3, PageID# 345, ¶ 2; Doc. No. 49-4, PageID# 352, ¶ 2.) Watkins and Lyles were housed in a unit at SCCF that was monitored by Defendant Letney. (Doc. No. 49-1, PageID# 337, ¶ 4.)

   A.  Watkins' Complaint and Subsequent Filings

In his verified complaint, Watkins states that, on September 22, 2016, Defendant Letney called him a "monkey." (Doc. No. 1, PageID# 4.) When Watkins asked Letney for a grievance form to report the incident, Letney responded, "[A]in't none." (Id.) Around 3:30 or 4:00 p.m., Letney "came around to [Watkins's] cell at the Annex at S.C.C.F.," where Watkins's "cellmate [Lyles] had a phone [and was] showing it to [him]." (Id.) Watkins told Lyles, "to get the phone out

[of] the cell [because] CO Letney [was] in the window looking." (Id.) Letney then "busted into the cell saying give [the cell phone] to me." (Id.) Watkins states that he told Letney, "I have nothing." (Id.) Letney "kept looking and located [the phone] on [Lyles's] shelf." (Id.) Letney then "got on his walkie talkie" and "called Sgt. Hacker." (Id.) Hacker handcuffed Watkins and took him to the front office; then, joined by a counselor with a video camera, Hacker escorted Watkins to the clinic. (Id. at PageID# 5.)

Watkins received a disciplinary charge for this incident. During the subsequent disciplinary hearing on October 4, 2016, Letney testified that he observed the cell phone in Watkins's hand and that Watkins put the phone in the "back pocket of [his] TDOC . . . blues." (Id.) Watkins responded that Letney was lying and stated that he was wearing his "greys" on the date of the incident—TDOC-issued sweatpants that do not have a pocket—and not his blues. (Id.) Watkins asked Hearing Officer Brenda Pevahouse to review the videotape of Watkins being walked to the clinic to see what uniform Watkins had on. Pevahouse told Watkins that the video had been recorded over and was no longer available. (Id.)

Watkins attached to his complaint Tennessee Department of Corrections Policy 502.05, which defines the offense of possession or use of a cellular telephone as follows:

> Possession and/or use of a Cellular Telephone (PCT) (Class B): To have, own, gain, use or maintain control of a cellular telephone or any device which allows unauthorized/unmonitored two-way communication. Any such item found in a cell or room is presumed to be in the possession of all occupants of that housing space.

(Id. at PageID# 7.) Watkins also attached an inmate grievance filed on September 23, 2016, in which he argued that the phone had been found on Lyles's shelf and that, in accordance with TDOC policy, he and Lyles should have both been charged; instead, Watkins asserted, "the black man [was] the only one sent." (Id. at PageID# 15.)

Based on these allegations, the Court found in its initial screening order that Watkins stated "plausible claims against Defendants Letney, Hackner, Casteel and Pevahouse for race-based violations of the Fourteenth Amendment" because of their alleged dissimilar treatment of Watkins and Lyles. (Doc. No. 8, PageID# 56–57.) The Court also found that Watkins stated a procedural due process claim against Pevahouse based on her "den[ying Watkins] from presenting a video recording of the events at issue." (Id. at PageID# 57.) The Court dismissed Watkins's claims against other defendants and additional claims regarding safety conditions at SCCF. (Id. at PageID# 59.)

Shortly after the he filed his complaint, Watkins filed additional written statements detailing his allegations against each named Defendant. (Doc. No. 5.) In a statement concerning Defendant Letney, Watkins wrote that "[m]y cellmate w[as] showing me a phone when [Letney] came into the cell [and] told me to give him the phone[;] my cellmate had took it back and hid it on his shelf." (Id. at PageID# 45.) In a subsequently filed discovery motion, Watkins attached his responses to Defendants' interrogatories, in which he stated that "Lyles thr[ew] a cell phone on the bottom bunk, as I [was] picking it up giving it to him CO Letney [was] in the door window by the time he got his keys to open the door Lyles had grab[bed] the phone and I guess put it on his shelf." (Doc. No. 36, PageID# 177.) Watkins confirmed in the discovery responses that he physically held the phone for the "5 to 10 seconds" it took to pick the phone up off of his bunk and hand it back to Lyles. (Id. at PageID# 178.)

**B. Defendants' Filings**

Defendants' statement of undisputed material facts is based upon affidavits from Letney, Hacker, Casteel, and Pevahouse. (Doc. No. 51.) In that statement and its underlying affidavits, Defendants assert the following facts:

On September 22, 2016, Letney observed Watkins "sitting on the bottom bunk in Cell XD211 with a cellular telephone in his hand" and "witnessed [Watkins] attempting to hide the cellular telephone on a shelf in the cell." (Id. at PageID# 373, ¶¶ 8, 9.) Watkins's "cellmate was present in Cell XC211" when Watkins was seen with the cell phone. (Id. at PageID# 375, ¶ 22.) Watkins was removed from the cell, placed in restraints, and escorted to the main compound. (Id. at PageID# 374–75, ¶¶ 16–17.) Because Watkins was placed in restraints, a video camera recorded his being escorted to the main compound. (Id. at PageID# 375, ¶ 20.) "However, because the resulting video footage of the escort had no bearing on [Watkins's] charges related to his physical possession of a cellular telephone and because no physical force was used during the escort of Plaintiff, other than placing him in restraints, any related video footage was not saved." (Id. at ¶ 22.) Watkins was placed in segregation until his disciplinary hearing. (Id. at ¶ 19.) The cellmate "was not disciplined because [Watkins] was the only individual that was seen with the cellular telephone in his physical possession." (Id. at PageID# 376, ¶ 23.)

A disciplinary hearing took place on October 4, 2016. (Id. at PageID# 376, ¶ 25.) Watkins requested a copy of any video footage related to the cell phone incident and was informed no such video footage existed. (Id. at ¶¶ 27–28.) Pevahouse presided over the disciplinary hearing, but had no control or possession of any related video footage. (Id. at ¶¶ 26, 29.) "At no time during the hearing did [Watkins] allege that the cellular telephone in question belonged to his cellmate." (Id. at PageID# 377, ¶ 36.) Watkins was found guilty of the disciplinary charge and was "issued a written warning, assessed a fine of $4.00, and his visitation privileges were temporarily suspended for three (3) months." (Id. at ¶ 35.)

Watkins filed a Title VI complaint alleging race discrimination in the disciplinary charge. (Id. at PageID# 378, ¶ 37.) That complaint referenced on TDOC Policy 502.05, which states

"Possession and/or use of a Cellular Telephone/Communication Device . . . : To have, own, gain, use or maintain control of a cellular telephone or any device which allows unauthorized/unmonitored two-way communication. Any such item found in a cell or room is presumed to be in the possession of all occupants of that housing space." (Id. at PageID# 378, ¶ 40.) The TDOC Title VI Coordinator found that the evidence provided did not support Watkins's claim of race discrimination. (Id. at ¶ 41.)

All defendants were aware of TDOC Policy 502.05. (Doc. No. 49-1, PageID# 338–39, ¶¶ 15–16; Doc. No. 49-2, PageID# 342, ¶¶ 13–14; Doc. No. 49-3, PageID# 346, ¶¶ 13–14; Doc. No. 49-4, PageID# 353–54, ¶¶15–16.) However, Defendants state that the policy "is not applicable to the situation in question, as Defendant Letney personally viewed [Watkins] with a cellular telephone in his hand." (Doc. No. 51, PageID# 379, ¶ 44.) Defendants state that inmates of "various races, including Caucasian" have been charged, convicted, and disciplined for possession or use of a cell phone at SCCF. (Id. at PageID# 379–80, ¶¶ 45–47.)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Stiles, 819 F.3d at 848. A court must not weigh the evidence and determine the

truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775 (6th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. Shreve v. Franklin Cty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" St. Clair Marine Salvage, Inc. v. Bulgarelli, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. Anderson, 477 U.S. at 249–52.

This Court's Local Rule 56.01 addresses summary judgment motions and their accompanying statements of undisputed material facts. The rule provides that, if a statement of fact is disputed, the dispute must be demonstrated "by specific citation to the record." M.D. Tenn. Rule 56.01(c) (response to statement of facts). It also provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." M.D. Tenn. Rule 56.01(g) (failure to respond). However, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse

7

party has not responded," Evans v. Plummer, 687 F. App'x 434, 446 (6th Cir. 2017) (quoting Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the motion to determine whether the movant has discharged its burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.

## III. Analysis

Defendants argue that summary judgment is appropriate because the record as a whole does not show that there are genuine issues of material fact to be tried as to Watkins's equal protection and due process claims. In evaluating Defendants' arguments, the Court considers the facts set forth in their statement of undisputed material facts to be established for purposes of this motion. M.D. Tenn. Rule 56.01(g).

### A. Watkins's Equal Protection Claim

Watkins claims that Defendants violated his equal protection rights by only charging him and not his cellmate with possession of the contraband cell phone, a difference that Watkins attributes to the fact that he is African-American and his cellmate was white. The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government "that . . . intentionally treats one differently than others similarly situated without any rational basis for the difference." Loesel v. City of Frankenmuth, 692 F.3d 452, 461 (6th Cir. 2012). It directs, in essence, "that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Accordingly, disparate treatment is a threshold requirement of an equal protection claim. Marie v. Am. Red Cross, 771 F.3d 344, 361 (6th Cir. 2014).

The plaintiff also bears the burden of showing that he was treated differently from another who was similarly situated to himself, or "like him in all relevant respects." S.S. v. E. Ky. Univ., 532 F.3d 445, 457–58 (6th Cir. 2008). This does not require showing "exact correlation," but does

8

require showing "relevant similarity" between the plaintiff and the comparator. Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000). "Generally, the similarly situated determination is an issue of fact for the jury. However, a district court may grant summary judgment 'where it is clear that no reasonable jury could find that the similarly situated requirement has been met.'" Gohl v. Livonia Public Schools, 134 F. Supp. 3d 1066, 1088 (E.D. Mich. 2015) (quoting Fares Pawn, LLC v. Indiana Dep't of Fin. Insts., 755 F.3d 839, 846 (7th Cir. 2014)). A plaintiff claiming an equal protection violation on the basis of race must also show that discriminatory intent motivated the disparate treatment. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Defendants argue that Watkins and his cellmate Lyles are not similarly situated for purposes of an equal protection claim because only Watkins was observed with the cell phone in his hand. (Doc. No. 50, PageID# 364.) That Letney observed Watkins with the cell phone in his hand is established for purposes of summary judgment by Watkins's failure to respond to Defendants statement of undisputed material facts.[1] (Doc. No. 51, PageID# 373 ¶ 8.) The question for this Court is therefore whether that fact renders Watkins and Lyles not similarly situated in a material respect such that Watkins's equal protection claim fails as a matter of law. TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio, 430 F.3d 783, 790 (6th Cir. 2005).

---

[1] Watkins provides various accounts of what Letney observed in his filings. In his verified complaint, Watkins states that Lyles "had a phone showing it to me" when Letney looked in the cell window. (Doc. No. 1, PageID# 4.) In his motion to present facts, he states that "Letney seen the phone on my bunk when cellmate Lyles threw it on my bunk." (Doc. No. 52, PageID# 382.) In a letter filed with the Court, Watkins states that he picked up the phone and gave it back to Lyles when Letney looked in the window and Lyles hid it on his shelf before Letney entered the cell. (Doc. No. 5, PageID# 45.) In an interrogatory response, Watkins stated that "Lyles thr[ew] a cell phone on the bottom bunk, as I [was] picking it up and giving it to him CO Letney [was] in the door window by the time he got his keys to open the door Lyles had grab[bed] the phone and I guess put it on his shelf." (Doc. No. 36, PageID# 177.) In his disciplinary hearing, Watkins stated that Lyles had the phone and gave it to Watkins before Letney walked up. (Doc. No. 52, PageID# 387–88.) Watkins does not explain these contradictory accounts and they do not establish a genuine issue of material fact for purposes of summary judgment. See Dotson v. U.S. Postal Service, 977 F.2d 976, 978 (6th Cir. 1992). Watkins also does not dispute that he physically possessed the cell phone at some point during the encounter.

"Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." Id. (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004)). Defendants argue that the fact Letney observed Watkins with the cell phone in his hand is material to the application of TDOC Policy 502.05. They argue that, because Letney observed Watkins with the phone in his hand and did not find it "in a cell or room," the policy's presumption that it belonged to all of the cell's residents is not triggered. (Doc. No. 50, PageID# 365.) That Policy 502.05 is applied in this manner is undisputed for purposes of this motion (Doc. No. 51, PageID# 379 ¶ 44) and affirmed by all defendants. (Doc. No. 49-1, PageID# 339, ¶ 17; Doc. No. 49-2, PageID# 343, ¶ 15; Doc. No. 49-3, PageID# 347, ¶ 15; Doc. No. 49-4, PageID# 354, ¶ 17.)

Watkins does not refute that finding. Although Watkins identifies other inmates who are "all Blacks and were cellmates [and] they got caught with a phone in the cell [and were all disciplined]," he does not assert that, in any of these examples, one cellmate was observed with the phone in his physical possession. (Doc. No. 36, PageID# 182; see also Doc. No. 1, PageID# 5; Doc. No. 52, PageID# 382.) Thus, in the context of this case, the fact that Watkins was observed with the cell phone in his possession and Lyles was not renders the cellmates not similarly situated for purposes of this equal protection claim.[2] Because Watkins has not established a genuine issue of material fact as to this threshold step of the equal protection analysis, summary judgment is proper on this claim.

---

[2] The central dispute of fact in Watkins's argument is that Letney testified falsely at the disciplinary hearing that he witnessed Watkins put the cell phone in the back pocket of his "TDOC blues," when Watkins swears that he was wearing gray pants that did not have any pockets. (Doc. No. 1, PageID# 5; Doc. No. 36, PageID# 178–79, 183, 186, 215–16.) Watkins's assertion, if proved, would call the truthfulness of Letney's account of these events into question. That is what he sought the videotape of his transport to accomplish. It does not, however, create an issue of fact as to whether Letney observed the cell phone in Watkins's hand.

### B. Watkins's Procedural Due Process Claim

Upon initial screening of Watkins's complaint, the Court found that Watkins had stated a viable due process claim based on his allegation that Pevahouse denied him the opportunity to present video evidence of what he was wearing during his transfer from his cell to the SCCF clinic. (Doc. No. 7, PageID# 57.) The further proof developed since screening, however, defeats that claim at summary judgment.

"A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered." McMillan v. Fielding, 136 F. App'x 818, 820 (6th Cir. 2005). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). The record now shows that Watkins's disciplinary conviction resulted in a written warning, an assessment of a $4.00 fine, and the suspension of his visitation privileges for three months. (Doc. No. 49-4, PageID# 354, ¶ 20.) Such punishments are not atypical and significant hardships in the context of prison life and therefore do not give rise to a protected liberty interest. See McMillan v. Fielding, 136 F. App'x at 820 (holding ten days in lock up, loss of package privileges, and $4.00 fine not atypical and significant hardship); Ingram v. Jewell, 94 F. App'x 271, 273 (6th Cir. 2004) (holding $3.00 fine and 14 day loss of privileges "did not deprive [the inmate] of a protected liberty interest because the sanctions neither extended the duration of his sentence nor imposed an atypical, significant deprivation"); Brown v. Westbrooks, No. 3:17-CV-00686, 2017 WL 3868275, *2 (M.D. Tenn. Sept. 5, 2017) ("Confinement to segregation, the loss of privileges, fines, and restitution do not constitute an atypical and significant hardship in the context of prison life."). While Watkins also complains

that he suffered ill effects from being moved from his cell to a compound housing "lifers, gang members, racist staff and inmates that [are] not ever going home" (Doc. No. 36, PageID# 181), inmates generally do not have a "liberty interest in assignment to any particular prison, or housing unit within a prison." Jones v. Blackburn, No. 3:14-CV-01229, 2014 WL 2480601, at *7 (M.D. Tenn. June 2, 2014); but see Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (holding inmates have liberty interest in not being assigned to state supermax facility because of a combination of particularly strict conditions). While the loss of this evidence might have amounted to a discovery issue, it does not rise to the level of a constitutional violation. Summary judgment is therefore also warranted on Watkins's procedural due process claim.

**IV.     Conclusion**

For these reasons, Defendants' motion for summary judgment (Doc. No. 49) is granted.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE